IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN RAY REVELLS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 3:11cv609-WHA |
| | ) | [WO] |
| WARDEN DAVID WISE, *et al*., | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION and ORDER

Before the court is a 28 U.S.C. § 2254 petition for habeas corpus relief filed on July 25, 2011, by Petitioner Johnathan Ray Revells ("Revells"), an inmate of the Alabama Department of Corrections.[1]  In this petition, Revells challenges his conviction for capital murder imposed on him by the Circuit Court of Lee County, Alabama on March 7, 2007. After reviewing the § 2254 petition, Respondents' answers, and Petitioner's responses, the court concludes that no evidentiary hearing is required, and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## I. PROCEDURAL HISTORY

On September 23, 2004, Revells was indicted for capital murder in violation of ALA.

---

[1] Although the present petition was stamped "filed" in this court on July 29, 2011, the  petition was signed by Petitioner on July 25, 2011.  Pursuant to the prison "mailbox rule," the court considers July 25, 2011, as the date of filing.  (Doc. # 1 at 25).  *See also Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam) ("Absent evidence to the contrary in the form of prison logs or other records, [this court] will assume that [the prisoner's petition] was delivered to prison authorities the day he signed it . . . .")

CODE § 13A-5-40(a)(2) (1975).  In an unpublished opinion on direct appeal, the Alabama

Court of Criminal Appeals set forth the pertinent, undisputed facts surrounding the crime.

> On August 25, 2004, Revells, who was under the influence of crack cocaine, shot and killed his neighbor, Leroy Jones, as Jones sat on his front porch.  Revells went into Jones's house and took Jones's wallet, a knife, and the keys to Jones's Mercedes.  Revells left the scene in the Mercedes.

> Before anyone in law enforcement was aware of the events at Jones's house, a Lee County sheriff's deputy saw the Mercedes traveling at a high rate of speed and gave chase.  She lost sight of the car but heard a crash.  She came upon the car, which had been wrecked, but no one was inside or near the car.

> Sheriff's deputies found blood and Jones's wallet inside the car.  Law enforcement officials traced the Mercedes's license plate and found the car was registered to Jones.  A deputy was dispatched to Jones's home, and that is when Jones's body was discovered.

> A day after Jones was killed, Revell[s] was seen coming out of the woods at his grandmother's home.  By this time, officials had placed Revells's grandmother's home under surveillance.  On September 1, 2004, Donnie Surrett and Eric McCane, investigators with the Lee County Sheriff's Department, saw Revells driving his grandmother's pickup truck.  They followed the truck and a short, high-speed chase ensued.  Revells suddenly stopped, got out of the truck and ran into the woods.  The investigators stopped, and Surrett ran after him.  Revells stopped and raised his hands, but he refused Surrett's demand that he lie down on the ground.

> Revells and Surrett began struggling with each other.  Both Revells and Surrett received minor injuries in the struggle.  Two other law enforcement officials arrived and helped Surrett place handcuffs on Revells.

> Revells was taken back to the street, where he was treated for his injuries.  He was arrested on outstanding warrants for drug offenses.  Although he was a suspect in Jones's murder, he was not placed under arrest in connection with the murder.  The evidence is undisputed that, at the time of his arrest, Revells was not advised of his rights pursuant to *Miranda v. Arizona*, 38 U.S. 436 (1966) because authorities did not intend to interrogate him at that time.

2

Revells was taken to the jail in Opelika. The next morning, investigators questioned Revells. At that time, he confessed to killing Jones.

(Doc. # 11, Ex 4 at 2-3).[2]

When Revells was arrested, he made statements to Van Jackson ("Jackson"), an investigator with the Lee County Sheriff's Department. The trial court conducted a suppression hearing on the admissibility of the statements Revells provided to Jackson. During the suppression hearing held in the trial court, Revells challenged Jackson's failure to read him his *Miranda*[3] rights when he was initially arrested on the outstanding drug warrants. The relevant portion of the suppression hearing transcript provides as follows:

Q.   Was he placed under arrest concerning outstanding felony warrants for possession of drugs?

A.   Yes, sir, he was.

Q.   When he was brought out of the woods, did you have any contact with him?

A.   I did.

Q.   Prior to that, I guess, having any conversation with him, did you advise him of his constitutional rights?

A.   No, sir.

Q.   Did you have any intention to even interview him at that point?

A.   No, sir.

---

[2] All references to the record use the document numbering system of the court's electronic docketing system.

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3

Q.      Did he spontaneously make a statement to you?

A.      He did.

Q.      And what did he say?

A.      When he – when they brought him out of the woods, he was in handcuffs.  He had some injuries, so we had asked for some medical attention to see if we could get some treatment done to some of his injuries, and while we were standing in the roadway, Mr. Revels was standing there next to me, and, of course, I am familiar with Mr. Revels, and he told me that – he said, well, I guess if you had put me in jail before, all this stuff wouldn't have happened, was the initiating comment made to me by Mr. Revels.

Q.      Did you reply back to him?

A.      Sure.  I told him, I said, well, you know, it could, but you just don't ever know.

Q.      Did he make any comment back to you?

A.      Yes.  He at that point said that, well – he told me that it really probably wouldn't have mattered if he had been in jail or not because he probably would have made bond.  But he told me that the crack – he said that that stuff really had a hold on him; that – that – he said that he had tried to make an attempt to contact – that he called the person Bobby, but he referring to Investigator Yates; Donnie Yates that works in the investigative division as a Sergeant now.  He said that he had made a couple of attempt (sic) to contact him; that he could have been some help to us because he knew all the people that was dealing drugs, and that he had been dealing with them for so long.  He also said that after he couldn't make contact with Bobby, that – that he just decided that we were going to go ahead and arrest him, anyway, and at that point he said that – he thought he was going to spend a long time in jail because of all this stuff that had happened.

Q.      During that whole series of events, what you have related just then, you had never asked him a question?  Correct?

A.      No, I did not.

Q.      You did respond to what he was spontaneously saying to you?

A.      Sure, I did.

Q.      After he made that last statement, did you cease any further conversation unless he volunteered something?

A.      Sure.  Right around the time that he made the final comment about spending a long time in jail or being gone for a long time, the medical personnel, they did put some bandages on him and do some treatment on some of the scratches and injuries that he had, but he was placed in the patrol car and transported to the Lee County jail.

(Doc. # 13, Ex. 1 at 58-61).[4]

Revells was booked into the Lee County Detention Center where he was allowed to

---

[4]  Jackson also documented his encounter with Revells in a "Spontaneous Statement of Defendant" memorandum dated September 2, 2004.

On September 1, 2004, at approximately 10:00 PM/CST, Johnathan Ray Revells was captured in a wooded section of Lee Road 296 Smiths, Lee County, Alabama after a brief car and foot pursuit.  After being apprehended, Revells was standing on the roadway near the patrol units and unmarked law enforcement vehicles when he initiated a spontaneous conversation with Lt. Jackson.  While standing there in handcuffs Revells stated, "I guess you should have put me in jail, Mr. Jackson."  "Maybe all this stuff would not have happened."  Jackson responded by saying, I guess you might be right but who knows.  Revells said that he was so strung out on that stuff (crack) that it probably would not have mattered if he had been arrested that day or not because he would have made bond and probably done this anyway.  Jackson told Revells that he thought that everyone deserves a chance to change and that this had been the only reason that he did not arrest him immediately for the drug violation.  Revells stated that he knew he had asked for a chance to help but the crack really had a hold on him.  Revells said that he really could have helped us arrest some of those crack dealers because they trusted him and he had been dealing with them a long time.  Revells further stated that he had tried to contact Bobby, once, (referring to Investigator Surrett) by calling him on the phone and leaving a message.  According to Revells, after Bobby did not answer the phone that day or call him back, he did not worry about it anymore because he knew we would arrest him later.  Revells said, "this stuff (crack) has ruined my life."  Then Revells stated, I guess, all that really doesn't matter anymore."  "Because I will be gone for a long time now."
 The conversation ended.

(Doc. # 13, Ex. 2 at 7).

sleep and given food.  The next day, Jackson interviewed Revells at the Lee County

Detention Center.  Prior to interviewing Revells, Jackson read him the *Miranda* warnings.

Immediately after advising him of his rights, Revells inquired about an attorney.[5]

> A.    Well, right after I advised him of his rights, I read him his rights, he said that he – he said, you know, I think I might want to wait for a lawyer, and he followed up from – when he said that with, would that take a long time.  And I told him, no, that we could – we could try to get him a court appointed attorney, and I don't know how long it would take, but we could do it as soon as possible.

> Q.    At that point, did you cease questioning him?

> A.    No.  Well, you know, I was waiting for him to decide what he wanted to do.  And at that time –

> Q.    You just ceased talking to him?

> A.    Sure.  Sure.

> Q.    And then what happened?

> A.    And then at that point he asked me – he said – let me make sure I get this right because he said a couple of things at this point, but he did say

---

[5]  Jackson also completed a "Memorandum of Interview" in which he described the conversation with Revells.

> Lt. Van Jackson advised Jonathan Ray Revells of his Miranda Rights in the Lee County Sheriff's Office Investigative interview room.  After being advised of his rights, Revells stated, "I think, I might want to wait for a lawyer."  He asked if that was all right?  Lt. Jackson, told him "sure!"  Revells asked if that was going to take a long time.  Lt. Jackson stated that it would take sometime (sic) but it could be done as soon as possible.  Revells stated, "Well, I don't if I want to wait for a lawyer."  Lt. Jackson told Revells that if he wanted an attorney present, we could get him one appointed through the courts.  Revells stated, "I have the right to stop talking if I want to."  "And, I don't have to answer if I don't want to."  Lt. Jackson replied by saying, "that's right."  A few seconds pasted (sic) without any conversation.  Then, Revells waived his Miranda Rights by signing the rights form and the interview started.  He made no other mention of wanting an attorney or remaining silent.

(Doc. # 13, Ex. 2 at 24).

that – he said, well, I am not sure if I want to wait for a lawyer, and I told him that, you know, if he wanted a lawyer present that, you know, we could get him a court appointed, and we could have one there to be with him if he wanted that. And then he asked me, he said, well, so I don't have to answer a question if I did not want to? And I told him sure. And he also said that I could stop talking whenever I want to? And I said sure. There was a brief pause, and then he said, well, just give me that, and he took the form and signed the document, and we started the interview.

Q.    Okay.

(*Id*. at 73-74).

Revells then gave an oral statement that Jackson reduced to a written statement. (*Id*. at 78). After Jackson wrote out Revells' statement, Revells read the statement and signed it. (*Id*. at 79).

That day I really don't know what happened. I just did it. I know all those people down there. I lived down there for fifteen years on that road. I haven't shot anybody before this. He was just sitting on the porch. I really anit (sic) a bad person. I just shot him. That night I smoked crack and really did not have anywhere to go. I was just out there. I broke into a house on the main road near where Leroy lives. I don't know whos (sic) house it was. I saw the shot gun in hallway. I grabbed the shotgun and left walking. I walked up the road to Leroy's house with the gun. He was just sitting on the porch. I think he was watching tv but I am not sure what he was doing. I did not say anything to him. I was standing out to the side, in front of the house, near the shed. I just shot one time at him because I only had one shell. I walked up to the porch and walked in. He had his wallet, keys, and a knife on a wooden shelf, where the screen stopped, in front of him. I grabbed all those things and got in his car. The car was a Mecedes (sic). I threw the (sic) in the passenger seat and took off. I really don't know where I wrecked the car. I went straight to my grandmothers house. I have been in those woods the whole time. I left a couple of time (sic) and walked up to the tracks by the school. That day I was wearing a pair of blue shorts and I don't know what color T-shirt. The shoes I was wearing last night is the same one I had on the day I shot Leroy. I have been thinking about this for a week and I don't know why I done it. I guess, I will be thinking about it for a long time right now. I don't remember

7

everything that happened that day. I don't even remember where I wrecked the car. This statement is true and correct to the best of my knowledge.

(Doc. # 13, Ex. 2 at 18-22).

The trial court subsequently denied Revells' motion to suppress. On March 2, 2007, Revells entered a guilty plea pursuant to a plea agreement in which the State agreed to not seek the death penalty against him. Pursuant to ALA. CODE § 13A-5-42 (1975), the State presented its evidence to a jury which returned a guilty verdict on March 7, 2007.[6] On May 17, 2007, Revells was sentenced to life imprisonment without the possibility of parole in accordance with his plea agreement.

Revells appealed his conviction and sentence to the Alabama Court of Criminal Appeals. The Alabama Court of Criminal Appeals rejected Revells' arguments that his statements to officers were admitted in violation of *Miranda v. Arizona, supra*, because (1) he was interrogated without being offered the *Miranda* warnings, and (2) he made an equivocal request for an attorney that the officers did not clarify after he was advised of his *Miranda* rights. The court further determined that Revells had knowingly and intelligently waived his rights, and that his statements were properly admitted into evidence. The Court

---

[6] At the time that Revells entered his guilty plea, ALA CODE § 13A-5-42 (1975), provided as follows.

A defendant who is indicted for a capital offense may plead guilty to it, but the state must in any event prove the defendant's guilt of the capital offense beyond a reasonable doubt to a jury. The guilty plea may be considered in determining whether the state has met that burden of proof. The guilty plea shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence. A defendant convicted of a capital offense after pleading guilty to it shall be sentenced according to the provisions of Section 13A-5-43(d).

of Criminal Appeals then affirmed the judgment of the trial court.  The Alabama Supreme Court denied certiorari, and a certificate of judgment was entered on May 9, 2008.  (Doc. # 11, Ex. 9).

Revells then filed a Rule 32 petition for post-conviction relief on June 12, 2008.[7] (Doc. # 11, Ex. 11).  After an evidentiary hearing, the trial court denied relief on the following claims:

(1) his counsel was ineffective for failing to secure a mental evaluation;

(2) his counsel was ineffective for failing to inform Revells of the intent element of capital murder and failed to argue lack of intent;

(3) his counsel failed to investigate an intoxication defense;

(4) his trial counsel was ineffective for failing to inform the defendant of any lesser included offenses and failed to argue lesser included offenses at trial;

(5) his guilty plea was not knowing or voluntary; and

(6) that his trial counsel was ineffective for failing to challenge evidence or cross-examine witnesses at trial.

(Doc. # 1 at 21-22).

In a motion to reconsider, Revells asserted that his ineffective assistance of counsel claims should have been evaluated under the standard announced in *United States v. Cronic*,

---

[7] The Circuit Court of Lee County docketed Revells' Rule 32 petition on June 18, 2008.  (Doc. # 11, Ex. 11 at 1).  However, Revells signed his petition on June 12, 2008.  (Doc. # 11, Ex. 11 at 21).  Nevertheless, the trial court, and this Court treat the date Petitioner signed the Rule 32 petition as the date it was filed.  *See Ex parte Allen*, 825 So. 2d 271, 272 (Ala. 2002) ("Alabama courts have held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing.) (citations omitted); *see also Holland v. State*, 621 So. 2d 373, 374 (Ala. Crim. App. 1993) (following *Houston*, 487 U.S. at 270-72).

466 U.S. 648 (1984) instead of *Strickland v. Washington,* 466 U.S. 668 (1984).  The trial court denied Revells' motion to reconsider, and Revells appealed.  (Doc. # 11, Ex. 12 at 73).

The Court of Criminal Appeals affirmed the denial of relief.  (Doc. # 11, Ex. 14).  Specifically, the Court of Criminal Appeals ruled that the trial counsel had properly evaluated and denied relief on Revells' ineffective assistance of counsel claims under *Strickland*.  The Court found that Revells' claims did not rise to the level of "very limited and egregious failure of representation" necessary to invoke *Cronic*.  (Doc. # 11, Ex. 14 at 7).  The Court further found that "Revells waived any defect in the guilt phase other than sufficiency of the evidence."  (*Id*. at 12).  The Court considered Revells' claims that his trial counsel was ineffective but determined that Revells had failed to demonstrate prejudice.  (*Id*. at 12-15).   Finally, the Court determined that Revells' guilty plea was knowing and voluntary, and that Revells was aware of the terms of his plea agreement.  (*Id*. at 15-17).  Revells sought rehearing of his claims, which the Court of Criminal Appeals overruled.  (Doc. # 16, Ex. 16).  On August 6, 2010, the Alabama Supreme Court denied Revells' petition for writ of certiorari and a certificate of judgment issued on September 10, 2010.  (Doc. # 11, Ex. 18)

Revells then filed the instant section 2254 petition in which he raises the following claims for habeas relief:

1.     The lower court misapplied the law and reached unreasonable conclusions of facts and affirmed the circuit court's denial of [his] motion to suppress [his] statement at the scene of the arrest, [and his] confession at the Detention Center.

2.      The lower court misapplied the law, reached unreasonable conclusions of facts and affirmed the circuit court's denial of [his] Rule 32 petition based on the inapplicability of *United States v. Cronic*, 466 U.S. 648 (1984) to a trial where trial counsel entered into a stipulation during plea negotiations with the State that he would not contest the evidence.

3.      The lower court misapplied the law, reached unreasonable conclusions of facts and affirmed the circuit court's denial of [his] Rule 32 petition based on the failure to satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 688 (1984) to a trial where:

> A.      Trial counsel failed to subject the prosecution's case to a meaningful adversarial process;
> B.      Trial counsel failed to request lesser included offense jury instructions;
> C.      Trial counsel failed to put on any evidence in defense; [and]
> D.      Trial counsel failed to move for acquittal.

4.      The lower court misapplied the law, reached unreasonable conclusions of facts when it held that [he] was fully informed of all aspects of his guilty plea.

(Doc. # 1 at 17-20).

Pursuant to the orders of this court, Respondents answered the petition, arguing that Revells is not entitled to relief because his claims were properly adjudicated on the merits by the state courts. *Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402 (2000). They further assert that Revells' ineffective assistance of counsel claims are meritless. (Doc. # 11).

## II. DISCUSSION

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  Congress, through passage of AEDPA, "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

A writ of habeas corpus shall be granted *only if* the prior adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has held that a state court decision is "contrary to" federal law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts."  *Cone*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 404-06).  Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way.  *See Williams*, 529 U.S. at 411-13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II).  "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established

law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See id.* at 411. *See also Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The Court of Appeals for the Eleventh Circuit has held, "Clearly established federal law is *not* the law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original, quoting *Williams*, 529 U.S. at 412). The reviewing court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 786 (2011). "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument." *Smith v. Sec'y, Dep't. of Corr.*, 572 F.3d 1327, 1333 (11th Cir. 2009). "All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion." *Parker v. Sec'y, Dep't. of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003). Habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." *Greene v. Fisher*, ___ U.S. ___, ___, 132 S. Ct. 38, 43 (2011) (quoting *Harrington*, 562 U.S. at ___, 131 S. Ct. at

786).  "The usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because § 2254(d)'s 'highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.'" *Allen v. Sec'y, Fla. Dep't. of Corr.*, 611 F.3d 740, 748 (11th Cir. 2010) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted)).   As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther." *Harrington*, 562 U.S. at ___, 131 S. Ct. at 786.

Federal habeas courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)."  *Price*, 538 U.S. at 639.  The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d). . . ."  *Id.* at 636.  Within this disciplined framework, the court addresses Revells' claims.

## A. *Miranda* Claims - Suppression of Statements

14

Revells argues that the trial court erred by failing to suppress his statement given at the time of his arrest because he was not advised of his *Miranda* rights immediately.[8]  He also argues that because he made an equivocal request for an attorney that the officers did not clarify when he was advised of his *Miranda* rights, the statement he gave at the Lee County Detention Center should have been suppressed.  Revells raised both of these claims and supporting arguments on direct appeal.  The Alabama Court of Criminal Appeals rejected Revells' *Miranda* claims.

> Here the evidence shows that Revells' statement to Jackson as the two were standing at the roadside was made spontaneously.  Revells initiated the conversation with Jackson.  Jackson did not ask Revells any questions, and his replies to Revells' statement were neutral and did not invite further comment from Revells.  Nonetheless, Revells continued to speak to Jackson.  His statements to Jackson at that time were voluntary and freely given, without any type of compelling influences.
>
> Because the statements Revells made to Jackson before he was advised of his rights were unsolicited and spontaneous, they do not fall within the scope of *Miranda*.  Accordingly, the trial court properly allowed the statements to be admitted into evidence.

(Doc. # 11, Ex. 4 at 6).

In addition, the Court held that Revells' questions regarding an attorney after he was

---

[8]  According to Revells, the mere fact that he was under arrest demonstrates that any conversation with Jackson was the functional equivalent of a custodial interrogation.  He is simply wrong.  "Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last."  *Howes v. Fields*, ___ U.S. ___, ___, 132 S.Ct. 1181, 1191 (2012).  Revells does not argue, and the facts do not suggest, that after his arrest he was subjected to any coercive tactics to induce him to confess.  *See Rhode Island v. Innis*, 446 U.S. 291, 299 (1980) (Not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation."); *United States v. Young*, 377 Fed. Appx. 965, 969 (11th Cir. 2010) (being in custody is not sufficient to establish statements were the result the "functional equivalent of interrogation" rather than spontaneous statements.)

read his *Miranda* rights at the Lee County Detention Center did not require that his statement

be suppressed.  (*Id.* at 6)  After detailing the evidence, the Court found that Revells' waiver

of his *Miranda* rights was knowing and voluntary.

> This case is distinguishable from *McDevitt* and *Collins*.  The conversation between Jackson and Revells after Revells was advised of his rights does not indicate that Revells did not understand his rights or create an ambiguity, as was the case in *McDevitt*.  Indeed, Revells's questions and comments demonstrate that he knew he could have a lawyer present and that he could stop answering questions whenever he wished.  After taking a moment to consider his rights, Revells chose to waive his rights and proceed with the interrogation.  Unlike the situation in *Collins*, where the interrogating officer failed to respond when the suspect asked how long she would have to wait until she could get a lawyer, the interrogating officer in this case, Jackson, answered Revells's question regarding how long it would take for him to get a lawyer and then reiterated to Revells that the court would appoint a lawyer for him.  Revells' response was that he was not sure he wanted to wait for a lawyer.

> Revells did not manifest confusion or misunderstanding.  Jackson answered his question about how long it would take to get a lawyer, then Revells elected to proceed without a lawyer.  The record demonstrates that there was no misunderstanding or ambiguity for Jackson to clarify, thus, he was not required to question Revells to ensure that he understood his rights.

> Moreover, as Revells's acknowledged in his brief, the State presented testimony from Dr. Glen King, a psychologist who evaluated Revells and determined that he was competent to waive his rights.

> There was sufficient evidence presented during the suppression hearing and at trial to support the trial court's decision that Revells's waived his rights knowingly and intelligently.  That decision is not palpably contrary to the great weight of the evidence.  Therefore, the trial court properly admitted evidence of Revells's confession to Jackson at the Lee County jail.

(*Id.* at 12-13).

Revells' claims about his statements were decided adversely to him by the state court.

This court has undertaken a thorough review of the relevant transcripts, the opinion issued by the state court and controlling federal law. After review, the court finds that the state court did not decide Revells' claims "differently than [the Supreme] Court has [in a case based] on a set of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, rejection of these claims by the state court was not contrary to actual Supreme Court decisions or violative of clearly established federal law. *See Davis v. United States,* 512 U.S. 452, 458-462 (1994) (A suspect who wishes to invoke his right to remain silent must do so "unambiguously" and "unequivocal[ly]" . . . "[and i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him"). *See also Berghuis v. Thompkins*, 560 U.S. 370 (2010) (applying same standard to requests to remain silent). Moreover, under the circumstances of this case, the court finds that the decision of the state court was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence before the court. Thus, Revells is not entitled to relief on his *Miranda* claims. 28 U.S.C. § 2254(d)(1).

### B.  Ineffective Assistance of Counsel Claims - *Strickland* Standard

The clearly established federal law addressing issues of ineffective assistance of counsel is set forth in *Strickland v. Washington*, *supra*. Under *Strickland*, a petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel. First, the petitioner must establish that the performance of his

attorneys "fell below an objective standard of reasonableness." *Strickland* 466 U.S. at 688.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*; *Hinton v. Alabama*, ___ U.S. ___, ___, 134 S.Ct. 1081, 1088 (2014) (same).  Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense.  *Id.* at 687.  To establish prejudice, the petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Moreover, there is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Revells argues that his trial counsel provided constitutionally ineffective assistance during the trial after his guilty plea.  Specifically, Revells contends his counsel was ineffective for failing to (1) challenge the prosecution's case;  (2) request lesser included offenses jury instructions; (3) offer any evidence in defense; and (4) moving for a judgment of acquittal.  (Doc. # 1 at 20).

Revells raised these claims and supporting arguments in his Rule 32 petition.  After an evidentiary hearing, the trial court denied his petition.[9]

---

[9] Revells' claims in his Rule 32 petition, on appeal and in this court all vary slightly but the genesis of these claims stem from his guilty plea and his agreement to not challenge the State's evidence during the trial mandated by ALA CODE § 13A-5-42 (1975).  Because his claims change after each adverse decision, the

Second, the defendant claims that trial counsel was ineffective for failing to inform the defendant regarding the intent element of capital murder, and by failing to argue lack of intent at trial.  However, there was no evidence that the defendant did not intend to kill the victim, nor was there evidence presented that the defendant did not intend to take the victim's possessions. Therefore, this claim is without merit.  Moreover, it does not meet the (sic) either prong of the *Strickland v. Washington* test for ineffective assistance of counsel.  466 U.S. 668 (1984).  Counsel's failure to argue intent was based on the facts.  The decision not to argue intent was not prejudicial to the defense.

Third, the defendant claims trial counsel failed to investigate or argue any possible intoxication defense.   An intoxication instruction is only warranted when there is sufficient evidence in the record for a jury to entertain reasonable doubt as to the element of intent.  *Coon v. State*, 494 So.2d 184 (Ala. Crim. App. 1986).  However, Dr. King testified that he did not believe the defendant was "incapable of understanding his behaviors or the wrongfulness of his acts" at the time of the offense.  Pretrial Hearing p. 103. The defendant never made any mention at the time of his plea or at trial of failing to understand his actions due to intoxication.  The indictment in this case was read to the defendant, including the Grand Jury's charge that the defendant "intentionally" caused the death of the victim.  The defendant clearly and unequivocally stated that he was guilty of the offense, and never made any mention of any impairment of his ability to tell right from wrong. Therefore, counsel's decision not to pursue an intoxication defense would not meet the second prong of *Strickland*.

Fourth, the defendant claims that trial counsel was ineffective in failing to inform the defendant regarding lesser included offenses and for failing to request them at trial.  Neither felony murder nor manslaughter would be appropriate charges given the facts of this case.  Counsel's decision to urge the defendant to take a plea deal rather than risking a death sentence does not meet the first prong of the *Strickland* test.  Counsel's performance was not deficient. Moreover, the decision to take the plea deal and not try every facet of the case was the defendant's, and his attorneys were surprised at the decision.

*        *        *

Sixth, the defendant claims that trial counsel was ineffective for failing to contest evidence and cross-examine witnesses.  However, there is no claim that the evidence at trial was, in fact, insufficient.  The purpose of the trial

---

court details both the trial court's determination and the Alabama Court of Criminal Appeals decision.

phase of a capital murder guilty plea is for the State to show that it has sufficient evidence. The Court finds that the evidence presented was sufficient to prove the defendant guilty of capital murder. Even if counsel had made more extensive objections and had more strenuously cross-examined witnesses, the State would still have been able to show sufficient evidence that the defendant committed capital murder. The defendant's own statement, the admissibility of which was addressed at trial and on appeal, would likely have been sufficient in and of itself. All alleged deficiencies in trial counsel's performance would not meet the second prong of a *Strickland* analysis.

(Doc. # 1 at 21-22; Doc. # 11, Ex. 12 at 51-52).

On appeal from the denial of the Rule 32 petition, the Alabama Court of Criminal Appeals determined that because Revells could not demonstrate prejudice as required by *Strickland*, he was entitled to no relief on his ineffective assistance of counsel claims.

The United States Supreme Court established the "appropriate test for prejudice" as requiring "the defendant [to] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.

Here, if trial counsel had actively objected and challenged the State's evidence, he would have undermined and breached the terms of the plea agreement, as long as the State presented the evidence according to the version that the parties had agreed upon. "In light of the overwhelming evidence presented against [Revells], counsel's strategy was not unreasonable." *Lee v. State*, [Ms. CR-07-0054, October 9, 2009], ___ So. 3d ___, ___ (Ala. Crim. App. 2009).

Thus, because counsel's inactivity was a result of the terms of the guilty plea, it was not ineffectiveness. . . .

Revells has failed to show prejudice as a result of his counsels's (sic) performance. The forensic psychologist could not testify concerning Revells's intoxication at the time of the offense. Nor was there any evidence that his verbal I.Q. of 70 would have established an affirmative defense; in fact, the expert's evaluation was to the contrary. Moreover, Revells's claims

concerning his counsels (sic) lack of objections and cross-examination during the guilt phase do not establish prejudice as this was required pursuant to the plea agreement. Had the prosecutor attempted to introduce evidence that was not known to the defense or incorrect to what was known to the defense, trial counsel testified that he would have objected. Additionally, although Revells contended that his counsel should not have informed the jury of the terms of the plea agreement, this was necessary to explain counsel's lack of active participation. *See Smith v. State*, 838 S. 2d 413, 460 (Ala. Crim. App. 2002), cert. denied, *Smith v. Alabama*, 537 U.S. 109, 123 S.Ct. 695, 154 L.Ed. 2d 635 (2002) ("However, in the present case, the terms of [the witness's] plea agreement was before the jury. Defense counsel was allowed to cross-examine the witness extensively about the agreement and made the jury 'fully aware of the possible influences that the plea agreement could have had on [the witness's] testimony. The jury was free to reject [the witness's] testimony. It chose not to do so." *Wilson v. State*, 690 So. 2d 449, 462 (Ala. Crim. App. 1995). *See also Allen v. State*, 611 So. 2d 1152 (Ala. Crim. App. 1992).").

The burden to establish ineffectiveness of counsel "is particularly stringent when a defendant enters a guilty plea." *Key v. State*, 891 So. 2d 353, 374 (Ala. Crim. App. 2002), affirmed *Ex parte Key*, 891 So. 2d 384 (Ala. 2004), cert. denied, *Key v. Alabama*, 543 U.S. 1005, 125 S.Ct. 608, 160 L.Ed. 2d 466 (2004). Revells has not met this burden.

(Doc. # 11, Ex. 14 at 13-15),

The state courts' rulings were on the merits and are entitled to deference. Revells has failed to show the Alabama state court decisions on his ineffective assistance claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, and he is not entitled to habeas relief on these claims. *See Strickland*, 466 U.S. at 688, 694; 28 U.S.C. § 2254(d)(1).

## C. *Cronic* Standard of Review

Revells next argues that the state courts erroneously failed to apply the standard

articulated in *United States v. Cronic*, 466 U.S. 648 (1984),[10] to his claim that he was effectively deprived of counsel when his attorney entered into a stipulation, as part of his plea agreement, to not object to any evidence presented during the trial.  (Doc. # 1 at 19).  Revells raised this claim and supporting arguments in his motion to reconsider the denial of his Rule 32 petition.  The trial court summarily denied the motion.  On appeal from the denial of the Rule 32 petition, the Alabama Court of Criminal Appeals determined that Revells' reliance on *Cronic*, *supra*, was misplaced.

> Revells's claims that his counsel was ineffective for failing to provide a meaningful adversarial proceeding by objecting and cross-examining witnesses.  However, Revells's use of the *Cronic* standard is misplaced as his counsel had not failed to function as his advocate.  *Florida v. Nixon,* supra.  He was not constructively denied the assistance of counsel, because his counsel pursued defenses, attempted to negotiate plea bargains for lesser offenses, and was prepared to object or challenge evidence if the State had introduced evidence other than what had been revealed through discovery.  Trial counsel did not fail to challenge the prosecution.

> As trial counsel's performance was not presumptively prejudicial, the challenge to Revells's counsel's effectiveness is due to be evaluated pursuant to *Strickland v. Washington*, supra.  Because presumed prejudice under *Cronic* is "reserved to very limited situations,  . . . [Revells] must show actual

---

[10]  *United States v. Cronic*, 466 U.S. 648 (1984) establishes three exceptions to *Strickland's* prejudice requirement.  Under the first exception, prejudice may be presumed where counsel is either entirely absent from, or was prevented from assisting the accused during a critical stage of the trial. 466 U.S. at 659 n. 25 (explaining that an accused is denied counsel at a critical stage of trial "when counsel was either *totally absent,* or prevented from assisting the accused during a critical stage of the proceeding") (emphasis added). *Cronic's* second exception applies only where "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." 466 U.S. at 659 (emphasis added). This exception is reserved for situations in which counsel has "*entirely failed* to function as the client's advocate" by failing to meaningfully oppose the prosecution's case. *Florida v. Nixon,* 543 U.S. 175, 179, 189 (2004) (emphasis added). To dispense with a showing of actual prejudice, counsel's failure to test the prosecution's case "must be *complete*." *Bell v. Cone,* 535 U.S. 685, 697 (2002) (emphasis added). The third *Cronic* exception applies when "counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Cone,* 535 U.S. at 696.

prejudice." *Davie v. State*, 381 S.C. 601, 613, 675 S.E. 2d 416, 422 (2009). *See also Hays v. State*, 518 So. 2d 749, 759 (Ala. Crim. App. 19850 (sic), affirmed in part, reversed and remanded on other grounds, *Ex parte Hayes*, 518 [S]o. 2d 768 (Ala. 1986). ("We know of no other case wherein the presumption-of-prejudice analysis has been applied to facts similar to those herein.  We are not predilective toward expanding the 'presumption-of-prejudice' test.  It was incumbent upon the appellant to prove actual prejudice as per the requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).").

(Doc. # 11, Ex. 14 at 12-13).

The Court of Criminal Appeals held that the appropriate standard under which to evaluate Revells' claims was *Strickland,* and not *Cronic*.  The state appellate court's ruling was on the merits and is entitled to deference.  This court has undertaken a thorough review of the relevant transcripts, the opinion issued by the state court and controlling federal law.  After review, it is clear that the state court did not decide this claim "differently than [the Supreme] Court has [in a case based] on a set of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law.  *Williams*, 362 U.S. at 412.  Consequently, rejection of this claim by the state court was not contrary to actual Supreme Court decisions or violative of clearly established federal law.  Moreover, under the circumstances of this case, the decision of the state courts was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence before the courts.  Consequently, this Court cannot conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, and Revells is not entitled to relief on this claim. *See* 28 U.S.C. § 2254(d)(1).

### D.  Guilty Plea

Finally, Revells argues that his guilty plea was not knowingly and voluntarily entered because he "was not made aware of the consequences with a full understanding that counsel Azar was not going to provide assistance at trial." (Doc. # 1 at 20).  Revells raised the claim that his guilty plea was not knowing or voluntary in his Rule 32 petition.  The trial court determined that this claim was meritless.

> . . .  the defendant argues that his plea was not knowing or voluntary.  This claim is simply without merit.  The Court undertook a lengthy colloquy with the defendant to make sure that he was apprised of his rights, that he was giving them up voluntarily, and that he understood the charges against him. The defendant assured the Court multiple times that he understood his rights, that he was voluntarily giving them up, and that he was guilty of capital murder as charged in the indictment.

(Doc. # 1 at 22; Doc. # 11, Ex. 12 at 52).

The Alabama Court of Criminal Appeals affirmed the trial court.

> Revells contends that the circuit court improperly accepted his guilty plea, because it was unknowing and involuntary due to his verbal IQ of 70, because he was not informed of the terms of the plea bargain, and because the requisites of *Boykin v. Alabama*, 395 U.S. 238, were not met.
>
> The record contains the guilty plea colloquy in which Revells acknowledged that he had read and understood his rights in entering his plea. The trial court ascertained by asking Revells that he had signed the Ireland[11] form and had been informed of the nature of the charges, the penalties, his rights, and the consequences of pleading guilty as contained in the form.  Trial counsel affirmed that he had read and explained these rights to Revells.  The trial court ascertained that Revells understood the terms of his plea bargain, including that the charges other than capital murder would be nolle prossed. (Guilty plea R. 218).  He also understood that he was withdrawing his not

---

[11] *Ireland v. State*., 47 Ala. App. 65, 250 So. 2d 602 (1971).

guilty by reason of mental disease plea. The trial court read the charges in the indictment and ascertained that Revells understood them, as well as the possible sentences. The trial court affirmed that the facts proved the commission of the capital offense and that Revells understood the rights that he was waiving. The trial court then ascertained that Revells's plea had not been induced through promises or threats. Revells then reserved one issue for appeal and the circuit court adjudged him guilty.

\*     \*     \*

The record establishes that the requisites of *Boykin v. Alabama*, supra, and Rule 14.4, Ala. R. Crim. P. were met.

Moreover, there is no indication in the record that Revells's verbal I.Q. affected his understanding of his guilty plea. The experts determined that Revells was competent to stand trial; therefore, he was found capable of "understanding . . . court procedure; the capacity to disclose pertinent facts to defense counsel; the quality of relating to defense counsel; an appraisal of available defenses; the planning of legal strategy, including a possible guilty plea." *M.D. v. State*, 701 So. 2d 58, 64 (Ala. Crim. App. 1997).

As to Revells's claim that his counsel did not inform him of the terms of the plea agreement, Revells acknowledges, and the record reveals, that his counsel informed the jury of these terms at the guilt phase and Revells made no comment or objection. Although trial counsel stated that he could not recall whether he told Revells that the agreement was to refrain from objecting to and challenging the State's evidence was part of the agreement, Revells was clearly aware of these terms immediately prior to the guilt phase when counsel so informed the jury.

(Doc. # 11, Ex. 14 at 15-17) (footnote in original)

Revells' claim was decided adversely to him by the state courts. A thorough review of the relevant transcripts, state court opinions and controlling federal law demonstrate that these decisions were not contrary to clearly established federal law, were objectively reasonable and also represented a reasonable determination of the facts in light of the evidence presented. Revells is therefore entitled to no relief from this court on his claims

challenging his guilty plea.  28 U.S.C. § 2254(d)(1).

## III.  CONCLUSION

In light of the foregoing, it is ORDERED and ADJUDGED that  the petition for habeas corpus relief filed by Johnathan Ray Revells be and is hereby DENIED and DISMISSED with prejudice.

A separate judgement will enter.

Done this 24th day of September, 2014.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE